**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Mona Amini, Esq. (SBN: 296829)
mona@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

*Attorneys for Plaintiffs,*
Safora Nowrouzi and Travis Williams

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAFORA NOWROUZI AND TRAVIS WILLIAMS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>MAKER'S MARK DISTILLERY, INC., d.b.a. MAKER'S MARK,<br><br>Defendant. | **Case No.:** 3:14-CV-02885-JAH-NLS<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>**Date:** March 2, 2015<br>**Time:** 2:30 p.m.<br>**Courtroom:** 13B<br>**Judge:** Hon. John A. Houston |

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

I.   INTRODUCTION ................................................................. 1

II.  STATEMENT OF FACTS ...................................................... 2

III. LEGAL STANDARD ............................................................ 5

IV.  ARGUMENT ....................................................................... 6

   A.   PLAINTIFFS' CLAIMS ARE NOT BARRED BY CALIFORNIA'S
        SAFE HARBOR DOCTRINE ........................................... 6

        1.  The Safe Harbor Doctrine and Federal Labeling Laws ............ 7

        2.  The Federal Labeling Laws Do Not Give Defendant
            Protection Under the Safe Harbor Doctrine ....................... 10

   B.   PLAINTIFFS HAVE STATED VALID CLAIMS UNDER UCL
        AND FAL ........................................................................ 11

        1.  Plaintiffs Have Plausibly Alleged a Likelihood of
            Deception .................................................................. 11

        2.  Plaintiffs Have Alleged a Claim for Intentional
            Misrepresentation ....................................................... 13

            a) A reasonable consumer could reasonably rely on
               Defendant's misrepresentation that its product is
               "Handmade" ......................................................... 13

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

*b) Plaintiffs have sufficiently alleged Defendant's*
*fraudulent intent* ...............................................................15

3.      **Plaintiffs Have Alleged Negligent Misrepresentation** ........18

V.    **ALTERNATIVE LEAD TO AMEND** .........................................19

VI.   **CONCLUSION** .........................................................................19

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

**TABLE OF CONTENTS**                    ii

# TABLE OF AUTHORITIES

**Cases**

*Anunziato v. eMacchines, Inc.*,
    402 F. Supp. 2d 1133 (C.D. Cal. 2005) ........................................14

*Barker v. Riverside County Office of Educ.*,
    584 F.3d 821 (9th Cir. 2009) .........................................................5

*Beaver v. Tarsadia Hotels*,
    2014 U.S. Dist. LEXIS 90600, 9 (S.D. Cal. 2014) .......................8

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ...........................................................6, 7, 8

*Chabner v. United of Omaha Life Ins. Co.*,
    225 F.3d 1042, 1048 (9th Cir. 2000) ............................................8

*Chacanaca v. Quaker Oats Co.*,
    752 F. Supp. 2d 1111 (N.D. Cal. 2010) ......................................15

*Chapman v. Skype Inc.*,
    220 Cal. App. 4th 217 (2013) .....................................................17

*Chern v. Bank of America*,
    15 Cal.3d 866, 127 Cal.Rptr. 110, 544 P.2d 1310 (1976) ....17, 18

*Cook, Perkiss and Liehe v. N. Cal. Collection Serv., Inc.*,
    911 F.2d 242 (9th Cir. 1990) ......................................................14

*Cornerstone Propane Partners, L.P. Sec. Litig.*,
    355 F. Supp. 2d 1069 (C.D. Cal. 2005) ......................................14

*Davis v. HSBC Bank Nevada, N.A.*,
    691 F.3d 1152, 1165 (9th Cir. 2012) .....................................7, 8, 9

*Fellner v. Tri-Union Seafoods, L.L.C.*,
    539 F.3d 237, 245 (3rd Cir. 2008) ..............................................10

*Figy v. Frito-Lay N. Am., Inc., No.*
    2014 WL 3953755 (N.D. Cal. 2014) ...........................................12

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

*Foman v. Davis*,
    371 U.S. 178, 182 (1962) ................................................................. 9

*Freeman v. Time, Inc.,*
    68 F.3d 285 (9th Cir. 1995) ........................................................... 13

*Hall v. City of Santa Barbara*,
    833 F.2d 1270, 1274 (9th Cir. 1986) .............................................. 5

*Jou v. Kimberly-Clark Corp*.,
    2013 WL 6491158 (N.D. Cal. 2013) ...................................... 12, 14

*Kasky v. Nike, Inc*.,
    27 Cal. 4th 939, (2002) ................................................................ 12

*Kwikset Corp. v. Superior Court*,
    51 Cal.4th 310, 328 (2011) ............................................................ 1

*Lee v. City of Los Angeles*,
    250 F.3d 668, 688 (9th Cir. 2001) .................................................. 5

*Linear Technology Corp. v. Applied Materials, Inc*.,
    152 Cal.App.4th 115, 134-135 (2007) .......................................... 12

*Manchouck v. Mondelez Int'l Inc*.,
    2013 WL 5400285, at *3 (N.D. Cal. 2013) ................................... 16

*McDougal v. County of Imperial*,
    942 F.2d 668, 676 (9th Cir. 1991) .................................................. 5

NL Industries, Inc. v. Kaplan,
    792 F.2d 896, 898 (9th Cir.1986) ................................................... 5

*Oestreicher v. Alienware Corp*.,
    544 F.Supp.2d 964, 973 (N.D. Cal. 2008) .................................... 14

*Pizza Hut, Inc. v. Papa John's Int'l, Inc*.,
    227 F.3d 489, 497 (5th Cir. 2000) ................................................ 14

*Pom Wonderful LLC v. Coca Cola Co.,*
    572 U.S. ____(2014) ............................................................... 6, 10

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

*Pom Wonderful LLC v. Coca Cola Co.,*
    Case No. 2:08-cv-06237 (C.D. Cal. 2008) .................. 6, 7, 10

*Smith v. Jackson,*
    84 F.3d 1213, 1217 (9th Cir. 1996) .................... 5, 6

*Torres v. JC Penney Corp.,*
    2013 U.S. Dist. LEXIS 66506, 9-10 (N.D. Cal. 2013) .......... 7

*U.S. S.E.C. v. ICN Pharm., Inc.,*
    84 F. Supp. 2d 1097, 1098 (C.D. Cal. 2000) ............... 5

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097, 1108 (9th Cir. 2003) ................... 6

*Von Koenig v. Snapple Beverage Corp.,*
    713 F. Supp. 2d 1066, 1076 (E.D. Cal. 2010) .............. 9

*Westlands Water Dist. v. Firebaugh Canal,*
    10 F.3d 667, 670 (9th Cir.1993) ..................... 5

*Whitaker v. Thompson,*
    248 F. Supp. 2d 1, 3 (D.D.C. 2002) ................... 7

*Williams v. Gerber Products Co.,*
    552 F.3d 934, 938 (9th Cir. 2008) ............. 12, 13, 14, 18

**Statutes**
Business & Professions Code § 17200 ................... 2, 3, 9

Business & Professions Code § 17500 ................... 2, 3

15 U.S.C. § 1051 ............................... 1

27 U.S.C. §§ 201-219 ........................... 9

27 U.S.C. § 205(e) ............................. 9

21 C.F.R. § 102.33(c) and (d) ...................... 11

**Rules**
Fed. R. Civ. P. Rule 12(b)(6) .................. 5, 6, 12, 15

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In the words of the California Supreme Court, "simply stated labels matter." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 328 (2011). "The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source." *Id*. In fact, "[a]n entire body of law, trademark law (see, e.g., 15 U.S.C. § 1051 et seq. [Lanham Act] ), exists to protect commercial and consumer interests in accurate label representations…because consumers rely on the accuracy of those representations in making their buying decisions. *Id*.

Defendant Maker's Mark Distillery, Inc. ("Maker's Mark" or "Defendant") seeks to capitalize on consumers' reliance on the representations it makes on the labels of the whisky. Defendant manufactures, markets, and sells "Maker's Mark Kentucky Straight Bourbon Whisky." [Complaint, ¶ 25] All of Defendant's whisky bottles prominently claim the whiskey is "Handmade." [Complaint, ¶ 29]. However, Defendant's whisky was and is not "Handmade," as photographs and video footage of Defendant's manufacturing clearly demonstrate that Defendant actually uses mechanized and/or automated processes to manufacture and bottle its whisky. [Complaint, ¶¶ 2, 14].  "Handmade" and "handcrafted" are terms that consumers have long associated with higher quality manufacturing and high-end products. [Complaint, ¶ 16].  Defendant attaches these untrue and misleading labels to all the "Maker's Mark Kentucky Straight Bourbon Whisky" bottles it markets and sells throughout California and the United States. [Complaint, ¶ 3, 17].  This conduct is not only injurious to consumers who purchase Defendant's whisky in reliance on these false and misleading representations, but also to other businesses in the marketplace who are robbed and beat out by Defendant who misrepresent their product to acquire an unfair advantage in the marketplace.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Based upon Defendant's false and misleading advertising and unfair business practices, Plaintiff brought the following action on behalf of himself and others similarly situated, alleging violations of (1) California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200 et seq.; (2) California's False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500 et seq.; (3) negligent misrepresentation; and (4) intentional misrepresentation.

Despite the evidence presented in Plaintiffs' Complaint, Defendant moves to dismiss on the basis that Plaintiffs have failed to state a claim because (1) Maker's Mark's label is affirmatively authorized under state and Federal law, (2) Plaintiffs have not plausibly alleged a likelihood of deception, (3) Plaintiffs cannot state a claim for intentional misrepresentation, and (4) the economic loss doctrine bars Plaintiffs' claims of negligent misrepresentation.  [Defendant's Motion, p. 4-15].

However, whether Defendant's advertisement violates the UCL or FAL is a factually driven inquiry inappropriate for resolution on a Motion to dismiss. Moreover, Defendant's arguments fail as Plaintiff's claims are not barred by California's safe harbor doctrine and Plaintiff has sufficiently stated claims under the UCL and FAL.  For these reasons, and as further discussed herein, Defendant's motion should be dismissed.

## II.    STATEMENT OF FACTS

Plaintiffs Safora Nowrouzi and Travis Williams ("Plaintiffs") filed the present action on December 5, 2014 against MAKER'S MARK DISTILLERY, INC. d.b.a. MAKER'S MARK ("Defendant").  [ECF No. 1].  The Complaint alleges (1) violations of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200 et seq.; (2) violations California's False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500 et seq.; (3) negligent misrepresentation; and (4) intentional misrepresentation for Defendant's false representations on its labels and advertisement of its whisky as being "Handmade" when in fact it is manufactured by machines through an entirely mechanized processes. [Complaint

¶ 14].

Despite Defendant's claim that its whisky is "Handmade," Defendant's own photos and video footage of Defendant's manufacturing process show that Defendant's whisky is not "Handmade" as Defendant actually employs mechanized and/or automated processes to manufacture and bottle its whisky, including but not limited to, (1) the process involved in grinding/breaking up the grains; (2) the process involved in mixing the grains with other ingredients, such as yeast and water; (3) the process involved in transferring this mixture into its fermenting location; and, (4) the process involved in bottling the whisky. Defendant attaches these untrue and misleading labels to all of the whisky bottles it markets and sells throughout the state of California and throughout the United States. [Complaint ¶ 2].   On these labels, Defendant's "**Handmade**" claim prominently appears in large *bold* font on the front of the bottle, and two more times on the side of the label.  [Complaint ¶¶ 17, 29, 30, 31].  This is done in an apparent attempt to market the whisky as being of higher quality by virtue of it being made *by hand*. As a result of these misrepresentations, Defendant induced Plaintiffs and similarly situated consumers to rely upon and purchase and pay more for its whisky on the basis it is of supposedly of superior quality and workmanship. [Complaint ¶¶ 17, 34].

The photos and the video footage made in association with Defendant of Defendant's manufacturing process entitled "Maker's Mark Distillery Tour" ("Tour Video") and another titled "Maker's Mark Bourbon Factory," ("Factory Video"), vividly depict the manufacturing process as being mechanized and/or automated, rather than "Handmade" as Defendant claims. [Complaint ¶ 15]. Defendant's whisky manufacturing process involves grinding and breaking up grains using an "old antique roller mill", which is mixed with yeast and water to make "mash," then left to ferment in large vats and later distilled into whisky. [Complaint ¶¶ 36, 39].  However, Defendant's "old antique roller mill" is in fact a

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

mill powered by two electronically driven motors and the entire mechanized and/or automated process is controlled by a set of electronic control panels requiring little to no human supervision, assistance or involvement to prepare the grain, which makes Defendant's mill neither old and antique nor Defendant's product "Handmade" as it claims on its label. [Complaint ¶¶ 40, 41, 42]. Next, the prepared grain is combined in a large vat with other ingredients using a electric powered machine to blend the mixture through another mechanized, automated process with little to no human supervision, assistance or involvement.  [Complaint ¶¶ 43, 44, 45].  Then, the mixture is transferred to a large fermenting cat with an elaborate piping system with electronic control panels which controls the machine automated, mechanized and involves little to no human supervision, assistance or intervention.  [Complaint ¶¶ 46, 47, 48]. Subsequently, after the mixture is distilled, it is transferred by means of a mechanized and/or automated process into oak barrels to age.  [Complaint ¶¶ 49, 50].  Finally, after Defendant's whisky has aged, Defendant fills its bottles using a series of machines and pipes to fill the bottles approximately a dozen bottles at a time through another process that is automated, mechanized, and involves little to no human supervision, assistance or involvement. [Complaint ¶¶ 51, 52. 53, 54].  Ultimately, even the placing the labels which contain the offending "Handmade" statement is achieved by a mechanized and/or automated process.  [Complaint ¶¶ 55, 56].

Plaintiffs Safora Nowrouzi and Travis Williams each purchased Defendant's allegedly "Handmade" whiskey which displayed the offending label in reliance upon Defendant's claims that its product was "Handmade," believing that Defendant's whisky was of superior quality by virtue of being made by hand rather than by a machine. [Complaint ¶¶ 32, 33, 34]. However, Although Defendant claims its whisky is "Handmade," Maker's Mark whisky is actually manufactured using a mechanized and/or automated process, with little to no human supervision, assistance or involvement as described herein and in Plaintiffs' Complaint.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

[Complaint ¶ 35]. As a result of Defendant's misrepresentations regarding its Defendant's whisky, Plaintiffs and other putative class members were induced into purchasing and overpaying for the product under the belief that the whisky they purchased was of superior quality because it was "Handmade." Had Plaintiffs and putative class members been made aware that Defendant's whisky was not in fact "Handmade" they would not have purchased the product, or would have paid less for it, or purchased a different product. Therefore, Plaintiffs and putative class members suffered injury in fact and lost money and/or property as a result of Defendant's misrepresentations. [Complaint ¶ 58].

### III.   LEGAL STANDARD

On a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss, "[a]ll allegations of material facts are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). In addition, the Court must also "draw inferences in the light most favorable to the plaintiff." *Barker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009); see also *U.S. S.E.C. v. ICN Pharm., Inc.,* 84 F. Supp. 2d 1097, 1098 (C.D. Cal. 2000) ("The court must accept as true the factual allegations of the complaint and indulge all reasonable inferences to be drawn from them, construing the complaint in the light most favorable to the Plaintiff.") (citing *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir.1993); *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986).

A court will not normally look beyond the four corners of the complaint in resolving a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). A Rule 12(b)(6) Motion to Dismiss "is viewed with disfavor and is rarely granted." *McDougal v. County of Imperial*, 942 F.2d 668, 676 n.7 (9th Cir. 1991) quoting *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986). Therefore, a dismissal of a plaintiff's complaint, without leave to amend, is appropriate only where "it appears beyond doubt that plaintiff can prove no set of

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

facts that would entitle her to relief." *Smith v. Jackson,* 84 F.3d 1213, 1217 (9th Cir. 1996). A dismissal for failure to state a claim with Rule 12(b)(6) "should ordinarily be without prejudice. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003).

In light of the above standards, Defendant's Motion should be denied or, alternatively, Plaintiffs should be granted leave to amend their Complaint.

## IV.    ARGUMENT

### A.    PLAINTIFFS' CLAIMS ARE NOT BARRED BY CALIFORNIA'S SAFE HARBOR DOCTRINE

Defendant erroneously argues that Plaintiffs' claims fail under the California's "safe harbor" doctrine relying on the unsupported premise that Defendant is insulated from liability for its misrepresentations on its whisky bottles' labels because Defendant's label was reviewed and pre-approved by the Alcohol and Tobacco Tax and Trade Bureau ("TTB"), the federal agency responsible for enforcing labeling requirements for alcoholic beverage pursuant to the Federal Alcohol Administration Act ("FAAA"). [Defendant's Motion, p. 1]. Defendant reasons that since its label purportedly complies with federal alcohol labeling laws, Plaintiff's claims regarding the contents of Defendant's label should be precluded under California "safe harbor" doctrine, including Plaintiffs' claims under the UCL and FAL.

Defendant cites to a variety of cases, relying primarily on the reasoning from *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) and *Pom Wonderful LLC v. Coca Cola Co.*, Case No. 2:08-cv-06237 (C.D. Cal. 2008),[1] *see generally* Defendant's Motion, in making its argument that

---

[1] Defendant improperly cites to the District Court's opinion, despite the case being heard on appeal and ultimately overturned by the Supreme Court of the United States in *Pom Wonderful LLC v. Coca Cola Co.*, 572 U.S. ____(2014). In addition, Defendant incorrectly cites the District Court case as a Northern District of California case, when in fact the case was heard before the Central District of California.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

1   Defendant's compliance with federal law and regulations insulates it from

2   Plaintiffs' misrepresentation claims." [Defendant's Motion, p. 4]. However, as it

3   applies here, although *Cel-Tech* addresses California's "safe harbor" provision

4   and explains its application to the UCL, and *Pom* addresses federal label

5   regulations, there is no applicable safe harbor in this case.

6       The safe harbor doctrine is inapplicable in this case because there is no

7   federal or state law on point creating a safe harbor for Defendant's conduct. In

8   other words, there is no legislation that **actually bars** Plaintiff's action or **clearly**

9   **permits** the conduct alleged in the action. *Cel-Tech*, 20 Cal. 4th 163 at 183.

10  Moreover, there is no regulation promulgated by a state or federal agency clearly

11  permitting or requiring the allegedly deceptive behavior. *Davis v. HSBC Bank*

12  *Nevada, N.A.,* 691 F.3d 1152, 1165 (9th Cir. 2012). Therefore, Defendant cannot

13  shield itself using California's safe harbor doctrine.

### 1. The Safe Harbor Doctrine and Federal Labeling Laws

15      Defendant's contention that any action taken by a federal agency

16  pursuant to federal regulation is enough to apply the "safe harbor" doctrine,

17  misapplies the "safe harbor" doctrine, stretches it too far and overlooks an

18  important distinction: there is a difference between (1) not making an activity

19  unlawful, and (2) making that activity lawful; only acts that the Legislature has

20  determined to be lawful may **not** form the basis for an action under the unfair

21  competition law. *Torres v. JC Penney Corp.*, 2013 U.S. Dist. LEXIS 66506, 9-10

22  (N.D. Cal. May 8, 2013); citing *Cel-Tech* at 183. It would contravene public

23  policy and reason in general to immunize an alcohol manufacturer from consumer

24  fraud suits because the labels of its products had been approved by the TTB.

25  Unlike, for example, the FDA's "rigorous" pre-approval process for drugs

26  (*Whitaker v. Thompson*, 248 F. Supp. 2d 1, 3 (D.D.C. 2002)), the TTB's approval

27  //

28  //

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

of alcohol labels hinges on self-reporting.[2] Thus, the TTB's approval of Defendant's label demonstrates nothing more than that Defendant repeatedly affirmed to the TTB that its product is truly handmade. It does not suggest that if the TTB had known the true process by which Maker's Mark was actually made, it would have concluded that Defendant's label complied with federal law.

As Defendant notes in its motion, "[w]hen specific legislation provides a 'safe harbor,' plaintiff's may not use the general unfair competition law to assault that harbor." *Cel-Tech*, 20 Cal. 4th 163, 182. In other words, a plaintiff may not "plead around an absolute bar to relief simply by recasting the cause of action as one of unfair competition. *Id.* However, to forestall an action under the unfair competition law, another provision must actually '**bar**' the action *or* **clearly permit the conduct**." *Id.* at 182-183. Alternatively, the safe harbor may also forestall an action under the unfair competition law if a regulation promulgated by a state or federal agency "clearly permit[s]," or "indeed require[s]," the allegedly deceptive behavior. *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1165 (9th Cir. 2012). Accordingly, the safe harbor doctrine is narrow (*Beaver v. Tarsadia Hotels,* 2014 U.S. Dist. LEXIS 90600, 9 (S.D. Cal. July 1, 2014); *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000)), and should only be applied if there is some statute or regulation that actually bars the action, or clearly permits or requires the alleged conduct.

Here, Defendant does not argue that a statute or regulation "**actually bars**" Plaintiffs' claims, or that a statute or regulation "**clearly permit**" or "**requires**" it to label its product "Handmade." *See generally,* Defendant's Motion, p. 4-8. Instead, Defendant puts forth the argument that it is protected by the safe harbor doctrine because the TTB approved its label. [Defendant's Motion, p.1]. However, Defendant fails to cite to any statutory or regulatory authority that **actually bars**

---

[2] *See,* the TTB's application for certification/exemption of label/bottle approval: http://www.ttb.gov/forms/f510031.pdf

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Plaintiffs' claims, as none actually exist. *See generally,* Defendant's Motion, p. 4-8. Furthermore, although Defendant puts forth the argument that the TTB's approval of its label equates to a statutory or regulatory language that "**clearly permit**" or **"require"** the conduct complained of by the Plaintiffs, this is simply untrue. The safe harbor doctrine does not apply in this case, which is evident in Defendant's own motion and the cases cited in its moving papers.

First, there is no statutory or regulatory language that **clearly permits** or **requires** the conduct complained of by Plaintiffs. Arguably, had there been any such language on point, Defendant would have cited it in its moving papers. Instead, Defendant cites to the FAAA. However, the FAAA does not have any **clear language permitting** or **requiring** the conduct complained of by Plaintiff (i.e, the FAAA does not have clear language permitting or requiring Defendant to misrepresent its product as being "handmade.") *See generally,* 27 U.S.C. §§ 201-219. In fact, the FAAA has language condemning Defendant's alleged conduct. The FAAA states that "[i]t shall be unlawful for any person engaged in business as a distiller… to sell… or otherwise introduce in interstate or foreign commerce… any distilled spirits… likely to mislead the consumer… as to the… quality of the product." 27 U.S.C. § 205(e). Additionally, the FAAA states that Defendant may not make "statements on the label that are… false [or] misleading." *Id.* Thus, Defendant's own statutory cite actually supports Plaintiffs' position in that it actually requires Defendant not to make false or misleading claims on its label.

Second, even if *arguendo* Congress has delegated to the TTB the function of reviewing and approving Defendant's label, this alone does not bring Defendant's conduct within the protection of the safe harbor doctrine. As a general rule, the safe harbor defense is founded on statutes and regulations (*Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1166), not on agency action, which does not rise to the level of federal law, much in the same way as preemption. *Von*

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626

1  *Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1076 (E.D. Cal. 2010)

2  [A FDA policy "cannot be accorded the weight of federal law for purposes of the

3  safe harbor rule...."]; *see also, Fellner v. Tri-Union Seafoods, L.L.C.*, 539 F.3d

4  237, 245 (3rd Cir. 2008) (Federal preemption of state law does not occur "every

5  time someone acting on behalf of an agency makes a statement or takes an action

6  within the agency's jurisdiction").  Here, Defendant fails to cite any authority to

7  the opposite effect.

### 2. The Federal Labeling Laws Do Not Give Defendant Protection Under the Safe Harbor Doctrine

10  The case law cited in Defendant's own moving papers supports the

11  notion that an agency's action alone is not enough to bring Defendant's conduct

12  within the safe harbor protection. For example, in *Pom*, which Defendant heavily

13  relies upon, the plaintiff alleged that defendant Coca-Cola misled consumers to

14  believe its Pomegranate Blueberry juice consists primarily of pomegranate and

15  blueberry when it actually consisted of (the cheaper) apple and grape juice.

16  Specifically, the juice's label stated in large font "Pomegranate Blueberry" and

17  underneath it, in smaller font, it also displayed the text "flavored blend of 5

18  juices." In reality the juice contained 99.4% apple and grape juice, 0.1% raspberry

19  juice, and only 0.3% pomegranate and 0.2% blueberry juice. There, the court in

20  *Pom* found defendant Coca-Cola was within the protection of the safe harbor

21  doctrine because the FDA had specific language allowing merchants to advertise

22  its product in such a way. (*Pom Wonderful LLC v. Coca-Cola Co.,* 572 U.S. ___

23  (2014)). Specifically, the FDA "concluded that manufactures of multiple juice

24  beverages may identify their beverages with a non-primary, characteristic juice, as

25  Coca-Cola does here." *Id*.; *see also,* 21 C.F.R. § 102.33(c) and (d).

26  Here, there is no similar language from the TTB. Defendant attempts to use

27  *Pom* and other case dealing with label requirements to show that this case should

28  also be precluded by California's safe harbor doctrine. However, *Pom* is easily

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

distinguishable from this instant matter because the federal authority there included actual regulatory language permitting defendants' conduct.  However, here the TTB does not allow alcohol makers to claim "handmade" on its labels, even if only part of the process is "handmade." Had the legislature truly indented to allow merchants to label its product as "handmade" when in fact partially or wholly manufactured through mechanized processes, it would have clearly stated so, as would be required for the safe harbor doctrine to apply.

### B.    PLAINTIFFS HAVE STATED VALID CLAIMS UNDER UCL AND FAL

Defendant argues Defendant argues Plaintiffs' UCL and FAL claims fail because: (1) term "handmade," as it appears on its label, is not a "specific and measurable claim" [Defendant's Motion, p. 9]; (2) a reasonable "common sense" interpretation of Defendant's "handmade" claim would not lead to the conclusion that the whole process is made using hands (*Id.* at 10 and 11); and (3) that the "handmade" representation is not misleading because Defendant makes its bourbon production process available to the pubic (*Id.* at 11). Although Defendant conflates the issue, Defendant argues Plaintiffs' UCL and FAL claims fail because the "reasonable consumer" would not have been deceived by Defendant's label. *Id.* at 1. However, for reasons state herein and below, Defendant's arguments are unsupported and Defendant's motion to dismiss should be denied.

### 1. Plaintiffs Have Plausibly Alleged a Likelihood of Deception

Plaintiffs' allegations of deception are not implausible. Common sense would dictate that "handmade" means made by hand, or, at the very least, made by handheld tools. Merriam-Webster simply defines the term "handmade" in single sentence as "created by a hand process rather than by a machine." While it may be true that bourbon may not be made without certain primitive tools, bourbon can and is made without complex, automated machines that involve little to no human intervention or supervision. To show deception, for purposes of claim for violation of California's Unfair Competition Law (UCL) and False

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Advertising Law (FAL), Plaintiffs must plausibly plead that (1) they relied on product's packaging and were deceived, and (2) a reasonable consumer would likely be deceived. *Figy v. Frito-Lay N. Am., Inc.*, No. 13-3988 SC, 2014 WL 3953755, at *9 (N.D. Cal. 2014). "The California Supreme Court has found 'that these laws prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Williams v. Gerber Products Co*., 552 F.3d 934, 938 (9th Cir. 2008); citing*, Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002).

Although Defendant attempts to impose the reasonable consumer standard in its 12(b)(6) motion (*Id.* at 8-9), California courts have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Williams v. Gerber Products Co.*, 552 F.3d 934, 938. This is so because whether an advertisement is deceptive often turns not only on the language of the advertisement itself, but also on extrinsic evidence, such as consumer surveys. *Id.* at 938-39 [explaining that determining "[w]hether a practice is deceptive, fraudulent, or unfair" generally "requires consideration and weighing of evidence from both sides"] (quoting, *Linear Technology Corp. v. Applied Materials, Inc.,* 152 Cal.App.4th 115, 134-135 (2007)); *see also Jou v. Kimberly-Clark Corp.*, No. C-13-03075 JSC, 2013 WL 6491158, at *7 (N.D. Cal. 2013) [explaining that the "meaning a reasonable consumer would ascribe" to a term is "not a question that can be resolved on a Rule 12(b)(6) motion"].

Accordingly, the Court should reject Defendant's definition of handmade and wait to construe the term "handmade" when appropriate. How a reasonable consumer would construe the term "handmade" cannot be resolved without discovery and/or expert testimony. *See, Williams*, 552 F.3d 934, 938. Therefore, Defendant's argument that Plaintiffs have failed to allege a likelihood of deception should be ignored, as they are premature at this point of the proceedings.

//

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

### 2.  Plaintiffs Have Alleged a Claim for Intentional Misrepresentation

Defendant attempts to argue that Plaintiffs have not alleged an intentional misrepresentation claim because (a) Plaintiffs have not and cannot plead that the challenged statement would mislead a reasonable consumer such that they could have reasonably relied on it, and (b) Plaintiffs have not and cannot allege that Defendant acted with the requisite fraudulent intent to deceive. However, as explained below and herein, Defendant cannot skirt around liability for its misleading misrepresentations on the labels of its whisky bottles.

#### a)  *A reasonable consumer could reasonably rely on Defendant's misrepresentation that its product is "Handmade"*

Defendant attempts to dismiss Plaintiffs' claim for intentional misrepresentation by questioning the reasonableness of Plaintiffs' reliance on Defendant's representation that its whisky is "Handmade."  However, this argument must fail, as motions to dismiss deceptive business practice claims should be granted only in "rare" situations, when the advertisement at issue is patently puffery, or where the allegations of deception are otherwise implausible. *Williams,* 552 F.3d 934, 938-939.[3]  Accordingly, the question of whether a reasonable consumer was deceived is premature, as Defendant's representations that its whisky is "handmade" is neither obvious non-actionable puffery, nor are

---

[3] The *Williams* Court pointed to *Freeman v. Time, Inc.,* 68 F.3d 285 (9th Cir. 1995) as an example of the "rare" situation where it was appropriate to dismiss a consumer fraud case for failure to allege a plausible deception to a reasonable consumer. *Williams*, 552 F.3d at 934, 939. There, a plaintiff alleged that mailers he had received fraudulently suggested that he had won a million dollar sweepstakes. But the mailer explicitly stated multiple times that the plaintiff would win the prize only if he had the winning number. "Thus, it was not necessary to evaluate additional evidence regarding whether the advertising was deceptive, since the advertisement itself made it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Id*. (citing *Freeman*, 68 F.3d at 285).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Plaintiffs' allegations of deception implausible. *Williams,* 552 F.3d 934, 938-939.

Defendant's "Handmade" representations made on its label cannot be considered mere puffery. Puffery exists when there is: "(1) an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying; or (2) a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion." *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir. 2000). By contrast, "misdescriptions of specific or absolute characteristics of a product are actionable." *Cook, Perkiss and Liehe v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990); *Cornerstone Propane Partners, L.P. Sec. Litig.,* 355 F. Supp. 2d 1069, 1087–88 (C.D. Cal. 2005) [a statement is puffery where it is "not capable of objective verification"]. Unlike other "puffery" cases, the term "Handmade" is not an "exaggerated, blustering" statement that could not reasonably be construed to have specific meaning. *Anunziato v. eMacchines, Inc.*, 402 F. Supp. 2d 1133, 1140 (C.D. Cal. 2005) [holding that the term "reliability" is puffery because it is "inherently vague and general"]. Nor is it a generalized claim of superiority. *Oestreicher v. Alienware Corp.,* 544 F.Supp.2d 964, 973 (N.D. Cal. 2008) [explaining that "'higher performance,' 'longer battery life,' 'richer multimedia experience,' 'faster access to data' are all non-actionable puffery."]. Here, Defendant's label is a specific claim about the method by which the product is produced (i.e., "handmade"). It is not a non-actionable puffery; it is not an exaggerated, blustering, and boasting, or a general claim of superiority over comparable products. Put simply, a product is either "handmade" or it is not.

Defendant's argument is similar to the unsuccessful argument made by the defendant in *Jou v. Kimberly-Clark Corp.*, 2013 WL 6491158 (N.D. Cal. Dec. 10, 2013). In *Jou*, plaintiff alleged that the defendant's labeling of its diapers as "pure & natural" was deceptive and misleading because it led reasonable consumers to believe that the diapers were free from non-natural ingredients. *Id.* at *6.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

1    Defendant countered, arguing that a reasonable consumer would construe "pure &

2    natural" to mean the product contained some natural ingredients, and not that the

3    product contained all natural ingredients. *Id.* at *7. Rejecting the defendant's

4    argument, the court explained that it was not permitted to decide between the

5    competing meanings of the slogan on a Rule 12(b)(6) motion. *Id.* at *7; *accord*

6    *Chacanaca v. Quaker Oats Co.,* 752 F. Supp. 2d 1111, 1125 (N.D. Cal. 2010)

7    [declining to hold at the motion to dismiss stage that the term "wholesome" was

8    too vague to mislead a reasonable consumer, despite the fact that the term might

9    reasonable construed to have several different meanings].

10       Thus, Defendant's argument that Plaintiffs and consumers could not

11   reasonably rely on the "Handmade" representation that Defendant placed on its

12   product's labels and advertising is unsupported, and more importantly premature at

13   this stage.

14                  ***b)    Plaintiffs    have    sufficiently    alleged    Defendant's***

15                  ***fraudulent intent***

16       Defendant puts for the argument that its representation that Defendant's

17   whisky is "handmade" is not misleading because the actual production process is

18   available to the public through Defendant's website. [Defendant's Motion, 11].

19   Defendant further contends that by disclosing the "truth" about its distilling and

20   bottling process on its website, Plaintiffs cannot show that Defendant intended to

21   defraud Plaintiffs and similarly stated consumers. [Defendant's Motion, 14].

22   However, this argument is entirely dependent on the assumption that all

23   consumers will actually visit Defendant's website prior to their purchase and that

24   they will actually find, and subsequently watch, the video posted there without the

25   product's label even informing them the video exists. Furthermore, it is wholly

26   unfair and contradicts common sense and public policy to allow fraudulent or

27   misleading misrepresentations to be made to consumers in the advertising of

28   products simply because the truth about the product is available for the consumer

to find. Merely mentioning Defendant's website and there disclosing Defendant's actual production process does not excuse Defendant's conduct of misrepresenting its product on its label. It would be unjust and against public policy to allow a merchant to misrepresent its product simply because the truth is accessible somewhere else.  Further, Defendants argument is effectively an admission that their product is not truly "Handmade" as represented on its label.

In the instant matter, Plaintiffs purchased Defendant's product in person where they each saw Defendant's product with the offending label and then purchased the product in the store. [Complaint ¶¶ 32, 33, 34]. The Complaint does *not* allege that Plaintiffs or putative class members ever visited Defendant's website *prior to* purchasing the falsely labeled product to have knowledge that Defendant's product was not actually "Handmade" or to be made aware of Defendants true manufacturing process. Even if Defendant's website provides notice as to Defendant's true manufacturing methods, Plaintiff and other putative class members, did not receive such notice *at the time they purchased the product* as the alleged notice is contained on the website and not on the product's label.

Defendant argues "a statement cannot be misleading where the advertiser expressly discloses to the buying public the objective facts underlying that statement." [Defendant Motion, p. 11-12]. However, the cases Defendant cites in support of this statement go against its argument. For example, in *Manchouck*, the court dismissed plaintiff's claims premised on statements that its cookies were "made with real fruit" because the "list of ingredients on the packaging serves notice to consumers that the products contain 'Raspberry Puree' and 'Strawberry Puree' respectively." *Manchouck v. Mondelez Int'l Inc.*, 2013 WL 5400285, at *3 (N.D. Cal. 2013). Unlike *Manchouck* and the other cases cited by Defendant, Defendant did not disclose on its label or give notice that its product is not handmade. At best, Defendant simply mentions discloses its process on its website. This is not enough to excuse Defendant's conduct of misrepresenting its

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

product as being "handmade" in large font on the front of its label.  It is also important to note that in making this argument, Defendant essentially admits that its product is *not* "Handmade."

In *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217 (2013), Skype advertised its monthly telephone calling plans as "Unlimited" with a numerical "footnote" superscript appearing immediately after the word unlimited.  *Id.* at 223. The footnote directed the reader to the terms of Skype's "Fair Usage Policy" which disclosed and described limits on how many calls could be placed per month. *Id.* Chapman filed suit under the UCL and FAL alleging Skype falsely advertised its calling plans as "Unlimited" when if fact they are limited as to the number of minutes and the number of calls. *Id.* at 222.   The Superior Court sustained a Demurrer on the basis "the term 'Unlimited' was qualified by the footnote on the same Internet page" *Id.* at 223. The California Court of Appeal reversed observing that only qualifications that are "conspicuous and apparent" could *possibly* qualify misleading advertisements. *Id* at 228. Furthermore, in *Chapman* the Court relied upon California Supreme Court precedent to express strenuous doubt as to whether any such qualifying language could actually absolve false advertisement:

> "Moreover, the fact that Skype ultimately discloses the limits in its "Fair Usage Policy" does not excuse its practice of labeling the plan "Unlimited" in its initial dealings with potential customers. (*Chern v. Bank of America* (1976) 15 Cal.3d 866, 876, 127 Cal.Rptr. 110, 544 P.2d 1310.)" *Chapman,* 220 Cal. App. 4th 223; citing *Chern,* 15 Cal.3d 876 ("the fact that defendant may ultimately disclose the actual rate of interest in its Truth in Lending Statement does not excuse defendant's practice of quoting a lower rate in its initial dealings with potential customers.").

Thus, Defendant cannot argue that its product's label makes a "conspicuous and apparent" reference to the video alleged to qualify Defendant's false and misleading representations because the label makes *no* reference to the video.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

1   Moreover, the California Supreme Court has ruled that subsequent qualifications
2   are not sufficient to absolve false advertising or unfair business practices. *Chern,*
3   15 Cal.3d 866, 876. The California Court of Appeal applied that ruling to the
4   exact argument Defendant makes here and rejected that argument.

5   Moreover, the Ninth Circuit rejected a similar argument in *Williams,* 552
6   F.3d 934. There, defendant attempted to use small print on a package's periphery
7   to immunize deceptive content on the front of the package. *Id.* at 939 [holding that
8   a defendant's use of the word "Fruit Juice" on fruit snack packaging could suggest
9   to a reasonable consumer that the product contained fruit juice, despite the fact
10  that the side of the package contained a list of the products' ingredients, on the
11  grounds that a "reasonable consumers should [not] be expected to look beyond
12  misleading representations on the front of the box to discover the truth from the
13  ingredient list in small print on the side of the box"]. In fact, in *Williams*, the
14  defendant had a stronger argument than Defendant does here.

15  Similarly here, reasonable consumers like Plaintiffs should not be expected
16  to look beyond misleading representations on the front of the bottle to discover the
17  truth. In *Williams*, the language on the side of the packaging specifically
18  contradicted the allegedly misleading representation of the front of the packaging.
19  *Id.* at 939. However, unlike in *Williams*, here Defendant's label merely makes
20  mention of Defendant's website and does not contradict or clarify the
21  representation on the front of the its label that the product is "Handmade."
22  Accordingly, the fact that the truth behind Defendant's production process is
23  available somewhere for the consumer to find should not deny Plaintiffs' relief or
24  excuse Defendant's deceptive conduct.

25  ### 3. Plaintiffs Have Alleged Negligent Misrepresentation

26  Defendant argues Plaintiffs' negligent misrepresentation claim is barred by
27  the economic loss doctrine. Plaintiffs do not oppose this section of Defendant's
28  argument only.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

# V.   ALTERNATIVE LEAVE TO AMEND

Alternatively, should this Court find any of Defendant's arguments persuasive, Plaintiffs respectfully request leave to amend the Complaint to cure any such perceived deficiencies.  As this Court is well aware, leave to amend should be "freely given" when the plaintiff could cure the pleadings defects and present viable claims.  Fed. R. Civ. P. 15(a); see *Foman v. Davis*, 371 U.S. 178, 182 (1962).

# VI.   CONCLUSION

Based on the reasoning above, Plaintiff's Complaint should not be dismissed, as Defendant's Motion to Dismiss is unsupported.  Thus, Defendant's Motion should be denied, or in the alternative, Plaintiffs respectfully request the Court grant leave to amend Plaintiffs' Complaint.

Dated: February 16, 2015                         Respectfully submitted,

                                                 **KAZEROUNI LAW GROUP, APC**

                                                 By: *<u>/s/ Abbas Kazerounian</u>*
                                                      ABBAS KAZEROUNIAN, ESQ.
                                                      MONA AMINI, ESQ.
                                                      ATTORNEY FOR PLAINTIFFS

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626