UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAFORA NOWROUZI and TRAVIS WILLIAMS, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br>v.<br><br>MAKER'S MARK DISTILLERY, INC., dba MAKER'S MARK,<br><br>    Defendant. | Civil No. 14cv2885 JAH(NLS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DOC. # 8]** |

## INTRODUCTION

Currently pending before this Court is the motion to dismiss [doc. # 8] filed by defendant Maker's Mark Distillery, Inc., dba Maker's Mark ("defendant"). The motion has been fully briefed by the parties. After a careful consideration of the pleadings and relevant exhibits submitted, and for the reasons set forth below, this Court GRANTS in part and DENIES in part defendant's motion.

## BACKGROUND

Plaintiffs Safora Nowrouzi and Travis Williams (collectively "plaintiffs") filed their putative class action complaint on December 8, 2014. The complaint alleges four causes of action against defendant: (1) false advertising; (2) unfair competition; (3) negligent misrepresentation; and (4) intentional misrepresentation. *See* Compl. Plaintiffs allege that defendant manufactures, markets and sells bourbon whisky products and that they each

purchased defendant's bourbon in November 2014. Id. ¶¶ 2, 25, 32-33. Plaintiffs claim they purchased defendant's product because its label contained the statement that it was "handmade" which allegedly led plaintiff to believe the product "was of superior quality" than other bourbon thus justifying spending more for defendant's product than other lesser quality products. Id. ¶¶ 21, 34, 36.

Plaintiffs allege they were misled by defendant's label, noting defendant's process for producing its bourbon involves "little to no human supervision, assistance or involvement." Id. ¶ 35. Plaintiffs further allege defendant's website demonstrates its "mechanized and/or automated" production process which plaintiffs claim is false and misleading because the term "handmade" is defined in the Meridian Webster dictionary as "'created by a hand process rather than a machine.'" Id. ¶ 65.

Defendant filed the instant motion to dismiss on January 16, 2015. Plaintiffs subsequently filed an opposition and defendant filed a reply brief. The motion was, thereafter, taken under submission without oral argument. *See* CivLR 7.1(d.1). In addition, plaintiffs, on March 27, 2015, filed a notice of recent authority and defendant, on May 5, 2015, filed a notice of supplemental authority.

## DISCUSSION

Defendant moves to dismiss plaintiffs' complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**1. Legal Standard**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984); *see* Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law"). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. Robertson, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations,"

he must plead sufficient facts that, if true, "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)(quoting Twombly, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. Ileto v. Glock, Inc., 349 F.3d 1191, 1200 (9th Cir. 2003); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement." Iqbal, 129 S.Ct. at 1949.

When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). If a court determines that a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

2.     **Analysis**

Defendant moves to dismiss plaintiff's claims for unfair competition law ("UCL") and false advertising ("FAL") under California's "safe harbor doctrine;" and, alternatively, because they fail to plausibly allege a likelihood of deception.  *See* Doc. # 8-1 at 4-13 (. Defendant also moves to dismiss plaintiff's intentional and negligent misrepresentation claims for failure to state a claim for relief. *See* id. at 13-16.

    **a.**    **UCL and FAL Claims**

        **1.**    **Safe Harbor Doctrine**

Defendant first contends plaintiffs' UCL and FAL claims must be dismissed pursuant to the safe harbor doctrine, explaining that, in Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal.4th 1163, 182 (1999)), the California Supreme Court held "California's safe harbor doctrine applies with extra force to the context of consumer protection laws" under  California's UCL. Id. at 5 (quoting Cel-Tech, 20 Cal.4th at 182). Defendant further explains that "where a defendant 'complie[s] with the relevant [federal] regulations,' its conduct is not subject to UCL or FAL claims." Id. (quoting Pom Wonderful LLC v. Coca Cola Co., 2013 WL 543361 *5 (N.D. Cal. Apr. 16, 2013)).  Thus, according to defendant, California's safe harbor doctrine may apply to bar suit if a federal agency reviews and pre-approves labels for regulatory compliance. Id. Defendant points out that the Tobacco Tax and Trade Bureau ("TTB") is the federal agency charged with promulgating regulations regarding labeling of distilled spirits, wines and malt beverages pursuant to the  Federal  Alcohol Administration Act ("FAAA"), 27 U.S.C. § 205 *et seq*. *See* Doc. # 8-1 at 5-6 (citing 27 U.S.C. § 205(e)). Defendant explains that the TTB reviews and pre-approves distilled spirit labels to ensure the label complies with applicable laws and regulations including determining whether the label is false and misleading. Id. (citing 27 U.S.C. § 205; 27 C.F.R. § 13.1, 13.21, 5.65(a)).

Defendant contends that, although this doctrine has yet to be applied in California to similar facts such as in the instant case, other courts have applied the doctrine and barred suit when a federal agency reviews and pre-approves labels for regulatory

compliance. Id. at 6-7 (citing In re Celexa & Lexapro Mktg. & Sales Practices Litig., 2014 WL 866571 *3 (D.Mass. Mar. 5, 2014)(barring claims that a prescription drug label was "misleading and inadequate" based on California's safe harbor provision); Kuenzig v. Hormel Food Corp., 505 F.Appx. 937 (11th Cir 2013)(*per curiam*)(affirming district court's dismissal on the grounds the labels complied with federal regulations and were approved by the appropriate federal agency prior to commercial use); Prohias v. Pfizer, Inc., 490 F.Supp.2d 1228, 1234 (S.D.Fla. 2007)(barring suit by applying safe harbor to an FDA approved label); DePriest v. Astra Zeneca Pharmaceuticals, L.P., 351 S.W.3d 173-78 (Ark. 2009)(same)).

Defendant further contends that the review here is "nearly identical to the pre-approval processes ... in cases where prescription drug labels and medical devices are ... expressly pre-approved." Id. at 7-8 (citing Barnes v. Campbell Soup Co., 2013 WL 5530017 *5 (N.D. Cal. 2013)(dismissing claims due to pre-approval by the USDA and Food Safety and Inspection Service); Meaunrit v. ConAgra Foods, Inc., 2010 WL 2867393 *7 (N.D. Cal. 2010)(dismissing claims due to pre-approval which included a finding that the label was not false and misleading); Trazo v. Nestle USA, Inc., 2013 WL 4083218 *7 (N.D. Cal. Aug. 9, 2013)(dismissing claims due to pre-approval by FDA of labels on meat products); Reigal v. Medtronic, Inc., 552 U.S. 312, 321 (2008)(state law claims barred because the FDA pre-approved the disputed pharmaceutical label); In re Medtronic, Inc., Sprint Fidelis Leads Products Liab. Litig., 623 F.3d 1200, 1203 (8th Cir. 2010)(same); Perez v. Nidek Co., 711 F.3d 1109, 1118 (9th Cir. 2013)(dismissing claims based on pre-market approval of medical device by FDA)). Thus, defendant contends that dismissal is also appropriate here. Id. at 8.

Plaintiffs, in opposition, contend defendant misapplies the safe harbor doctrine in this case because there is no specific legislation providing a safe harbor for defendant. Doc. # 10 at 7-8. Plaintiffs explain that, in order to forestall an action under the UCL, there must be a provision that actually bars the action or permits the conduct. Id. at 8 (citing Cel-Tech, 20 Cal. 4th at 182-183). Plaintiffs further explain that, alternatively,

1  safe harbor may bar an action if a regulation promulgated by a state or federal agency
2  "'clearly permit[s]' or 'indeed require[s],' the allegedly deceptive behavior." Id. (quoting
3  Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1165 (9th Cir. 2012)). Thus,
4  according to plaintiffs, "the safe harbor doctrine is narrow (internal citations omitted) ...
5  and should only be applied if there is some statute or regulation that actually bars the
6  action or clearly permits or requires the alleged conduct." Id. Plaintiffs contend that
7  defendant does not claim a statute or regulation actually bars plaintiffs' claims, or that a
8  statute requires or permits defendant to label its product as "handmade." Id. Instead,
9  plaintiffs assert defendant fails to cite any statutory or regulatory authority that actually
10 bars plaintiffs' claims. Id. at 8-9. Plaintiffs argue defendant's claim that the TTB's
11 approval of the label equates to a statutory or regulatory language permitting the language
12 is simply untrue. Id.
13      In addition, plaintiffs contend that, even if TTB has been delegated such a function
14 by Congress, an agency action such as TTB's cannot be given the weight of federal law for
15 safe harbor purposes. Id. at 9-10 (citing Koenig v. Snapple Beverage Corp., 713 F.Supp.2d
16 1066, 1076 (E.D.Cal. 2010); Fellner v. Tri-Union Seafoods, LLC, 539 F.3d 237, 245 (3rd
17 Cir. 2008)). Plaintiffs claim defendant's reliance on Pom, 2013 WL 543361, does not aid
18 defendant's safe harbor argument because the Pom court reasoned that there was specific
19 language in the statute precluding the alleged misconduct which is not the case here. Id.
20 at 10.
21      In reply, defendant asserts that the TTB is specifically charged with enforcement
22 of federal labeling regulations, including ensuring that statements made on such labels are
23 not false and misleading. Doc. # 11 at 2 (citing 27 C.F.R. § 5.42, 5.65(a), 13.1, 13.21;
24 27 U.S.C. § 205(e); http://www.ttb.gov/consumer/labeling_advertising.shtml). Defendant
25 further asserts that the TTB is tasked with the same approval process of labels as other
26 agencies, including the FDA (*e.g.*, drugs)and the USDA (meat and poultry). Id.
27 Defendant points out that plaintiffs did not address any of the cases defendant cited in
28 its moving papers in which courts have applied the safe harbor doctrine but, instead,

merely argued that the TTB's process is less rigorous than the FDA's process. Id. Defendant further points out plaintiffs failed to address any of the USDA cases, including Kuenzig, in which the Eleventh Circuit dismissed a complaint based on USDA pre-approval of the label at issue there. Id. at 2-3 (citing Kuenzig, 505 F.Appx. 937). Defendant claims "[t]here is no reason to think California courts would treat the TTB's pre-approval in this case any differently than the district court and the Eleventh Circuit treated the USDA's pre-approval in Kuenzig, particularly given that California courts have applied the safe harbor doctrine in other pre-approval contexts." Id. at 3.

Defendant also asserts plaintiffs misstate defendant's position, in that defendant does not contend "any action" taken by a federal agency triggers the safe harbor doctrine nor that defendant was "required" to use the word "handmade" or that there is an FAAA regulation which encompasses the word "handmade."[1] Id.

Plaintiffs submitted supplemental authority after the close of pleadings which provides some guidance. *See* Doc. # 15. The authority presented is a recent decision by the Honorable Jeffrey T. Miller, United States District Judge in Hofman v. Fifth Generation, Inc., Civil Case No. 14cv2569 JM(JLB)(S.D.Cal. March 18, 2015), in which Judge Miller denied the defendant's motion to dismiss on safe harbor grounds. Specifically, Judge Miller found the TTB's decision in investigating and approving defendant's label that included the word "handmade," to be an informal agency decision and, thus, not as stringent as the process used by the USDA or the FDA. *See* Doc. # 15, Exh. A at 12. Judge Miller further found that the defendant failed to cite any authority showing that the safe harbor doctrine extends to the TTB's informal agency action, noting that the defendant merely claimed the TTB specifically investigated and approved the label but found those facts could not be considered because they were not properly before the court on a motion to dismiss. Id. In addition, Judge Miller found it unclear from the record before the court that representations concerning the proper meaning of the word

---

[1] In addition, defendant points out it did not "'rely ... primarily'" on the reasoning in Pom, as plaintiffs claim, and note that the Pom decision did not involve state law claims nor the safe harbor doctrine. Doc. # 11 at 3-4.

"handmade" were necessarily within the TTB's purview.  Id.

After a careful review of the record, this Court finds the same reasoning applies here, where the Court is limited to considering the allegations set forth in the complaint. *See* Lee, 250 F.3d at 688-89.  This Court finds that, under the circumstances here, which are almost identical to those in Hofmann, this Court is unpersuaded, as was Judge Miller, at this juncture, that plaintiffs' UCL and FAL claims are properly barred by the safe harbor doctrine.  Accordingly, defendant's motion to dismiss plaintiffs' claims under the safe harbor doctrine is DENIED.

### 2. Likelihood of Deception

Defendant also contends that plaintiffs' UCL and FAL claims fail because plaintiffs do not plausibly allege a likelihood of deception which is required to state a claim for relief. Doc. # 8-1 at 8.  Defendant explains the reasonable consumer standard applies to plaintiffs' claims and, under that standard, plaintiffs must plead that "'members of the public are likely to be deceived' by the alleged false advertising statement.'" Id. (quoting Brod v. Sioux Honey Ass'n Coop., 927 F.Supp.2d 811, 828 (N.D. Cal. 2013)(citing Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995)).  Defendant further explains that "likely to be deceived" means "more than a mere possibility of misunderstanding---'likelihood' is measured in terms of whether a significant portion of the general consumer public could be misled." Id. at 8-9 (citing Lavie v. Proctor & Gamble Co., 105 Cal.App.4th 496, 508 (2003)).  Defendant asserts that dismissal is appropriate when "a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging." Id. at 9 (citing Werbel ex. rel. v. Pepsico, Inc., 2010 WL 2673860 *4 (N.D. Cal. July 2, 2010)).

Defendant argues that the term "handmade" cannot mislead a reasonable consumer as a matter of law because it is not a "'specific and measurable claim.'" Id. (quoting Vitt v. Apple Computer, Inc., 469 F.App'x 605, 607 (9th Cir. 2012)(explaining that an actionable false advertisement requires "a 'specific and measurable claim' capable of being proved false or of being reasonably interpreted as a statement of objective fact")).

1  Defendant claims that the term "handmade" is "far from ... '[a] factual representation[]
2  that a given standard has been met' ... particularly in the context of distilled spirits,"
3  because it is a general, subjective term that is not subject to measurement. Id. (quoting
4  Vitt, 469 F.App'x at 607). Defendant contends plaintiffs "all but concede that there is no
5  established standard for the use of the term 'handmade' in connection with the production
6  of distilled spirits," pointing to plaintiffs' reliance on a dictionary definition which lacks
7  the required specificity. Id.
8        Defendant further contends that, under the Ninth Circuit's "common sense"
9  approach, plaintiffs' proffered interpretation does not comport with common sense. Id.
10 at 10 (citing Stuart v. Cadbury Adams USA, LLC, 458 F.App'x 689, 690 (9th Cir.
11 2011)(affirming dismissal of a UCL claim because it "def[ied] common sense.")).
12 Defendant argues that a reasonable interpretation of the use of "handmade" on the label
13 "cannot be that Marker's Mark employees break up the grain with their hands, stir the
14 mixture by hand, distill and ferment the alcohol without the use of any machinery, make
15 ... glass bottles by hand, fill each bottle by hand, and handwrite the labels on the bottles."
16 Id. at 11. Thus, defendant contends "[n]ot even the least sophisticated consumer of
17 bourbon--certainly not a reasonable consumer--would understand that this consumed
18 drink, made from combining various ingredients together in different ways, would be
19 literally and entirely made with human hands." Id. In addition, defendant points out the
20 fact that its public website contains videos and photographs demonstrating the actual
21 production process for its product and notes its label describes, in part, its process and
22 invites consumers to visit the website if more information is needed. Id. Defendant
23 contends that a statement cannot be found misleading where the objective facts are
24 disclosed by an advertiser to the buying public. Id. (citing Porras v. StubHub, Inc., 2012
25 WL 3835073 *6 (N.D.Cal. Sept. 4, 2012); Manchouck v. Mondelez Int'l Inc., 2013 WL
26 5400285 *3 (N.D.Cal. Sept. 26, 2013); Thomas v. Costco Wholesale Corp., 2013 WL
27 1435292 *5 (N.D. Cal. Apr. 9, 2013)).
28       In opposition, plaintiffs contend that the definition of handmade requires discovery

and/or expert testimony and, therefore, cannot be resolved at this stage of the proceedings. Doc. # 10 at 11-12. Plaintiffs claim that the Ninth Circuit recognized the issue of whether a business practice is deceptive is a question of fact because it turns on extrinsic evidence such as consumer surveys, as well as on the language itself. Id. at 12 (citing Williams v. Gerber Products Co., 552 F.3d 934, 938-39 (9th Cir. 2008)(citing Kasky v. Nike, Inc., 27 Cal.4th 939 (2002)). Thus, plaintiffs argue that defendant's argument fails because it is premature. Id.

In reply, defendant points out that this Court can find, as a matter of law, that the use of the term "handmade" is not likely to mislead a reasonable consumer on a motion to dismiss pursuant Rule 12(b)(6). Doc. # 11 at 4-5 (citing, *inter alia*, Freeman v. Time, 68 F.3d 285, 289 (9th Cir. 1995)(affirming district court's dismissal of unfair business practices and false advertising claims based on a finding that a reasonable consumer was not likely to be misled as a matter of law); Werbel *ex rel*. Pepsico, Inc., 2010 WL 2673860 *4 (N.D. Cal. July 2, 2010)(dismissing UCL and FAL claims with prejudice based on a finding that no reasonable consumer would likely be deceived by a statement on product packaging)). Defendant further points out that this Court may determine whether a statement is puffery as a matter of law on a motion to dismiss. Id. at 5 (citing Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv., Inc., 911 F.2d 242, 245 (9th Cir. 1990)(concluding that the issue of whether a statement is puffery is often resolved on a motion to dismiss)). Thus, according to defendant, this Court may, at this stage of the proceedings, determine that defendant's "handmade" statement on its label is not misleading and/or is merely puffery. Id.

Defendant additionally submitted, as supplemental authority, a case in which a district court found the label at issue not misleading and dismissed the action with prejudice. *See* Doc. # 16 (citing Salters v. Beam Suntory, Inc., 2015 WL 2124939 (N.D. Fla. May 1, 2015)). This Court is persuaded by the reasoning presented therein. In Salters, the district court, after considering the plaintiffs' proposed definitions of the term "handmade," found that:

> In sum, no reasonable person would understand 'handmade' in this context to mean literally by hand. No reasonable person would understand 'handmade' in this context to mean substantial equipment was not used. If 'handmade' means only made from scratch, or in small units, or in a carefully monitored process, then the plaintiffs have alleged no facts plausibly suggesting the statement is untrue. If 'handmade' is understood to mean something else-- some ill-defined effort to glom onto a trend toward products like craft beer--the statement is the kind of puffery that cannot support claims of this kind. In all events, the plaintiffs have not stated a claim on which relief can be granted.

Salters, 2015 WL 2124939 at *3.

This Court agrees with the findings and conclusion of the Salters court. Here, plaintiffs' complaint alleges that "[d]efendant promotes its whisky as being '[h]andmade' when in fact [d]efendant's whisky is manufactured using mechanized and/or automated processes, which involves little or no human supervision, assistance or involvement ..." Compl. ¶ 1. Plaintiffs, in their opposition, posit two other proposed meanings: (1) "made by hand, or at the very least, made by handheld tools;" and (2) "created by a hand process rather than by machine." Doc. # 10 at 11. This Court finds that "handmade" cannot reasonably be interpreted as meaning literally by hand nor that a reasonable consumer would understand the term to mean no equipment or automated process was used to manufacture the whisky. Thus, this Court finds plaintiffs have failed to state a claim upon which relief can be granted. In addition, this Court is convinced that plaintiffs' UCL and FAL claims cannot possibly be cured by the allegation of other facts. Accordingly, this Court GRANTS defendant's motion to dismiss plaintiffs' UCL and FAL claims with prejudice. *See* Doe, 58 F.3d at 497.

      **b.**    **Intentional and Negligent Misrepresentation Claims**

Defendant also moves to dismiss plaintiffs' remaining two claims for intentional and negligent misrepresentation. In regards to plaintiffs' negligent misrepresentation claim, defendants contend that the "economic loss" doctrine bars the claim. *See* Doc. # 8-1 at 15-16. Plaintiffs do not oppose defendant's motion regarding this claim. *See* Doc. # 10 at 18. This Court, therefore, GRANTS defendant's unopposed motion to dismiss plaintiffs' negligent misrepresentation claim as barred by the economic loss doctrine.

As to plaintiffs' intentional misrepresentation claim, defendant contends that plaintiffs' claim fails because (1) the challenged statement cannot be found to mislead a reasonable consumer; and (2) there are no facts alleged to support a finding that defendant acted with the requisite fraudulent intent to deceive. *See* Doc. # 8-1 at 13-15. In opposition, plaintiffs disagree, contending the question of whether a reasonable consumer was deceived is premature and the question of intent is dependent upon the assumption that consumers will actually visit defendant's website and watch defendant's video prior to purchase. Doc. # 10 at 13-18.

In reply, defendant argues that plaintiffs' assumption is erroneous, in that it "conflates their claim for intentional misrepresentation under California common law (which requires fraudulent intent) with their separate claim under the UCL (which does not)." Doc. # 11 at 9. Defendant contends that whether consumers actually visit defendant's website before they purchase the bourbon has no bearing on whether defendant intended to deceive its consumers. Id. Defendant explains that, as in this case, "a website's disclosure of information alleged to be intentionally concealed does not support a claim for fraud." Id. (citing Kanawi v. Bechtel Corp., 590 F.Supp.2d 1213, 1226 (N.D.Cal. 2008); Borochoff v. GlaxoSmithKline PLC, 2008 WL 2073421 *8 (S.D.N.Y. May 9, 2008), *aff'd* 343 F.App'x 671 (2d Cir. 2009)). Defendant claims its public disclosure of its production process is entirely inconsistent with plaintiffs' allegations of fraudulent intent. Id. at 10.

This Court agrees with defendant. This Court finds that the question of whether a consumer was deceived is not premature and can be addressed here. *See* Stuart v. Cadbury Adams USA, LLC, 458 F.App'x 689, 691-92 (9th Cir. 2011)(affirming dismissal of fraud claim where the challenged statement could not, as a matter of law, have mislead a reasonable person). This Court further finds that the issue of intent in this case is not dependent on the assumption consumers will visit defendant's website as posited by plaintiffs. This Court finds that plaintiffs cannot plausibly contend defendant intends to deceive consumers about the nature of its processes when its label clearly describes the

process and points consumers to its website. In addition, this Court is convinced that plaintiffs' intentional misrepresentation claim cannot possibly be cured by the allegation of other facts. Accordingly, this Court GRANTS defendant's motion to dismiss plaintiffs' intentional misrepresentation claim with prejudice. *See* Doe, 58 F.3d at 497.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that defendant's motion to dismiss [doc. # 8] is **GRANTED IN PART and DENIED IN PART** as follows:

1. Defendant's motion to dismiss plaintiffs' UCL and FAL claims based on the safe harbor doctrine is **DENIED**;

2. Defendant's motion to dismiss plaintiffs' UCL and FAL claims based on failure to plausibly allege likelihood of deception is **GRANTED** and plaintiffs' UCL and FAL claims are **DISMISSED with prejudice**;

3. Defendant's motion to dismiss plaintiffs' negligent misrepresentation claim is **GRANTED**; and

4. Defendant's motion to dismiss plaintiffs' intentional misrepresentation claim is **GRANTED** and plaintiffs' intentional misrepresentation claim is **DISMISSED with prejudice**.

The Clerk of Court is directed to terminate this action.

Dated:       July 27, 2015

JOHN A. HOUSTON
United States District Judge